**IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.T. and O.T., individually and | : | |
| on behalf of A.T., | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | Case No.  3:24-cv-00822 |
| | : | |
| | : | |
| FREEHOLD REGIONAL HIGH | : | |
| SCHOOL DISTRICT BOARD OF | : | |
| EDUCATION, | : | |
| *Defendant.* | : | |

**VERIFIED, AMENDED COMPLAINT**

Plaintiffs by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, agents, and successors in office, to safeguard their rights under the United States Constitution, State, and Federal law, and in support thereof allege the following:

**PRELIMINARY STATEMENT**

1. A.T. is a seventeen-year-old student (DOB May 8, 2007), who is diagnosed, *inter alia*, with autism spectrum disorder, receptive-expressive language disorder, social communication disorder, and spinal-cord malformations, and immune dysfunction.

2. The Parents, A.T. and O.T. (the "Parents") are immigrants, who moved to the United States from the Republic of Albania. The Parents' native language is Albanian.

3. The Defendant Freehold Regional High School District (the "District" or the "Defendant") is the local educational agency ("LEA"), which is responsible for providing A.T. with a free appropriate public education ("FAPE").

1

4. At all times relevant, the District has inconsistently provided special education and related services to A.T. through an individualized education program ("IEP"). It is notable, the District frequently refuses to provide special education and to offer or implement the IEP.

5. The District has denied A.T. access to the benefits of his education on the basis of his disability by refusing to offer or implement IEP. This includes the District refusing to implement the IEP's accommodations. By refusing to implement the IEP accommodations, the District continues to deny him access to the benefits of his program.

6. A.T.'s IEP accommodations are essential for him to be able to access his education and to participate in the school environment.

7. In addition, the District further denied A.T. access to the benefits of his program when it retaliated against Parents for taking to steps to protect his right to a FAPE, which included them filing for due process.[1] More specifically, the District responded to Parents advocacy by refusing to implement the accommodations and related services in A.T.'s IEP, punishing A.T., and provoking him to get a behavioral response. The District's retaliation further denied A.T. the ability to access the benefits of his program on the basis of his disability.

8. It is notable that for the past three years, through the date of this filing, the District retaliated against the Parents for engaging in protected activities, which included advocating for A.T.'s right to a FAPE through the IEP process and filing due process lawsuits against the District.

---

[1] Due process is an administrative lawsuit to enforce a child's right to a FAPE.

9. The retaliation included, for example, subjecting A.T. to repeated school discipline, failing him in his classes, revoking the IEP, and refusing to implement the IEP, to name a few examples.

10. The Defendant District repeatedly subjected A.T. to a hostile learning environment when it provoked behavioral responses and when it allowed other students to repeatedly bully him. The hostile learning environment compounded the lack of access to his education.

11. The Defendant District discriminated against Parents on the basis of their national origin when it refused to interpret and translate documents for them in their native language, Albanian. The District's refusal in, and deliberate indifference to, the Parents' need for translation barred them from fully participating in their child's education. Without the ability to have technical, special education documents translated, the District denied Parents the ability to participate as members of A.T.'s IEP team.

12.  When Parents made their request for translation, the District refused to provide this accommodation. In fact, the District responded to Parents' requests for translation: "Mrs. [T] is clearly fluent". Here, the Parents were simply requesting to have certain documents translated. They were not asking to have interpreters present at meetings; rather, they were asking with translation regarding certain documents, so that they could meaningfully participate in their child's education.

13. The District's ongoing discrimination is the source of the Parents' and A.T.'s damages.

## **JURISDICTION AND VENUE**

14. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

3

15. Upon information and the belief, the Defendant School District is a federal funds recipient.

16. This court has supplemental jurisdiction over the Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

17. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

**Plaintiffs:**

18. Plaintiff A.T. is an adult individual and the parent, father, and natural guardian of A.T.

19. Plaintiff O.T. is an adult individual and the parent, mother, and natural guardian of A.T.

20. Both Parents reside at 9 Beaver Dam Road, Colts Neck, New Jersey, 07722.

21. Plaintiff A.T. is a minor child who resides with his parents at 9 Beaver Dam Road, Colts Neck, New Jersey, 07722.

**Defendant:**

22. Defendant Freehold Regional Board of Education is a public school district and local education agency ("LEA"), with its principal place of business at 11 Pine Street, Englishtown, New Jersey 07726.

## FACTUAL ALLEGATIONS

23. A.T. is a seventeen-year-old student (DOB May 8, 2007), who is diagnosed, *inter alia*, with autism spectrum disorder, receptive-expressive language disorder, social communication disorder, spinal-cord malformations, and immune dysfunction. [2]

---

[2] As reflected in A.T.'s June 2021 IEP, his deficits in language, vocabulary, inferential comprehension and figurative language, coupled with his weaknesses in written expression (organization/ adding details), may impede his performance across all areas of the curriculum. He benefits from support from a special education teacher, along with extended time on shortened assessments/assignments. Per A.T.'s 2021-2022 IEP, he was to receive in-class resource support for Science, English, Geometry, and History. He was also to receive pull-out supplementary

4

24. The Defendant District is the LEA, which is responsible for providing A.T. with a FAPE.

25. At all times relevant, the District has inconsistently provided special education and related services to A.T. through the IEP. It is notable that the District frequently refuses to provide special education and to implement the IEP.

26. A.T. has been classified as eligible for special education and related services since December 2015. The District has programmed for him under the classification of communication impairment.

27. A.T. has attended school in the District since September 2021.

28. A.T. currently attends Colts Neck High School. As set forth below, the District inconsistently provides special education to him, which includes failing to implement his IEP accommodations, so that he can access his education.

**As to the District's Disability-Based Discrimination:**

29. Throughout the time A.T. attended the District, it has refused to implement his IEP accommodations, which denied him access to his education on the basis of his disabilities.

30. In November 2021, A.T.'s English teacher refused to provide him with digital graphic organizers, which were one of his accommodations.

31. In February 2022, Mrs. T. reported these concerns to the Director of Special Services, Dr. Jessica Howland; the now Principal of Colts Neck High School, Dr. Brian Donahue; case

---

instruction for Reading Workshop (67 minutes 5x7 day cycle), integrated speech-language group therapy services (1x7 day cycle for 30 minutes), counseling services (1x7 day cycle for 20 minutes), and a shared aide.

5

manager Kimberly Rosas; and Supervisor of Special Education, Kelly Fitzhenry. Parents received no response to their concerns.

32.  In February 2022, A.T.'s teachers began to refuse to implement the assistive technology that A.T.'s IEP required. As of the date of this filing, the District is continuing to deny A.T. the ability to use assistive technology to access his program.

33. The IEP calls for assistive technology to allow him to complete his work. The science teacher, for example, forced A.T. to go without the assistive technology and, instead, forced him to write by hand. A.T. required this accommodation because of the low muscle tone in his hands and the pain he experiences when he writes.

34. Continuing into the fall 2022, A.T. was unable to complete many of his assignments, due to the fact that the District denied him the use of assistive technology.

35. During the 2021-2022 school year, A.T.'s geometry teacher refused to provide him with any of the accommodations.

36. Furthermore, during the 2022-2023 school year, A.T.'s history teacher refused to provide him with any accommodations.

37. These are just a few of the many examples of the District refusing to implement the IEP accommodations. The ongoing refusal has denied A.T. access to the benefits of his education equal to that of his non-disabled peers.

38. Likewise, the District never responded to Parents' requests for an IEP meeting to discuss speech services, counseling services (including class choices for 2022-23), or their requests to have the evaluations explained to them. Again, Parents' native language is Albanian. For this reason, they needed the consent forms and related documents translated for them in greater detail, so that they could fully understand them.

6

39. Dr. Howland repeatedly refused to engage with Parents regarding A.T.'s educational needs. She instructed Parents that all communications must proceed through counsel. Despite this directive, the Parents continued not to receive communication from the District.

40. On April 13, 2022, Mrs. T. wrote to the District:

    ... no one from the guidance office met with A.T. or reached out to us to explain and share the required or the elective classes offered in CNHS that A.T. could enroll. A.T. has received no help from the school on making these selections. Nevertheless, we tried to help him the best we could. You can see that selection on Genesis. I am also attaching pictures, Please [advise] what steps we need to take that A.T.'s class requests and elective choices are taken into consideration.

41. In May 2022, Parents took A.T. to Princeton Speech Language and Learning Center (PSLLC) for a comprehensive speech and language evaluation. Parents sought the evaluation to get an updated assessment of A.T.'s language profile and to inform academic planning.

42. PSLLC assessed A.T. on May 24, 2022. The evaluator concluded that A.T. had weak overall language skills, including foundational language, higher-level language, reading, writing, and social communication. A.T.'s writing abilities were far below expectations.

43. The PSLLC evaluation identified global, significant deficits in the area of social communication. The evaluator concluded: "The complexity of the above described social communication profile, in addition to his weak language skills, is the basis of [A.T.]'s difficulties with his peers during both unstructured and academic tasks. Therefore, he requires specialized instruction and intervention to improve his areas of deficit."

44. In mid-June 2022, the parties' respective counsel sought to schedule an IEP meeting as A.T.'s IEP was set to expire in June. That meeting never occurred. In fact, the District never took steps to convene an IEP meeting in a timely fashion.

45. A.T.'s report card in June 2022 reflected, *inter alia*, that he failed Geometry, English, World History, and Lab Biology for the fourth quarter. The District did not provide any direction to the availability of summer programming and never offered or suggested extended school year programming, despite A.T.'s failing grades and clear regression. The failing grades show the extent to which the District excluded him on the basis of his disabilities.

46. In August 2022, the District invited Parents to an IEP meeting. At the August 2, 2022 meeting, District personnel told Parents that it had unilaterally and unlawfully declassified A.T. District personnel asserted that the meeting was an evaluation planning meeting to reassess A.T.'s eligibility for an IEP. Notably, at no point during the meeting, did the District offer prior-written notice to declassify A.T. from special education. Similarly, it did not take any steps outlined by statute or the administrative regulations governing special education to declassify him.

47. The District's unilateral decision to declassify A.T. meant that he was going without his special education. To that end, though he has several disabilities, the District was now denying him his accommodations and modifications, which he needed in order to access his education equal to that of his non-disabled peers. The denial of the IEP, moreover, barred A.T. from accessing the benefits of his program.

48. Subsequent to the August 2, 2022 meeting, the District acknowledged its wrongdoing and confirmed that A.T. was still eligible for special education and related services. Significantly, however, the District never convened an IEP meeting for the 2022-23 school year. In fact, the District never even offered Parents an IEP for the 2022-2023 school year, which only further excluded A.T. from accessing his education.

49. On August 19, 2022, the District then posted A.T.'s schedule reflecting that it had removed him from in-class resource and placed him in all special education classes without any discussion with the parents at an IEP meeting or otherwise. It appeared the District had completely predetermined A.T.'s placement, programming, and schedule. A.T.'s schedule was posted without any consideration of his requested electives and, more significantly, without any notice or a proposed IEP.

50. Parents immediately reached out to A.T.'s guidance counselor to correct this error, only to be instructed that all communication must go through attorneys rather than with the District directly.

51. Noting that the District had yet to convene and/or offer an IEP for the 2022-23 school year, Plaintiffs' counsel contacted District's counsel again about its additional unilateral actions and noted the Parents' disagreement with the change

52. Parents filed a Petition for Mediation on or around September 1, 2022 pursuant to the Individuals with Disabilities Education Act (the "IDEA") to stop this unilateral change from going into effect, as a precautionary measure since they were not sure whether the District would move forward with this action in spite of not discussing same with them.

53. The parents subsequently converted this mediation into a petition for due process in September 2022.[3]

---

[3] In March 2024, Parents filed a second Petition for Due Process to assert A.T.'s right to a FAPE.

54. The District honored its stay-put[4] obligations under the IDEA by maintaining A.T.'s placement, but never convened an IEP meeting or proposed an IEP prior to the start of the 2022-23 school year.

55. In fact, when an IEP meeting was finally convened on October 27, 2022 (almost a year and a half after A.T.'s last IEP meeting), the district discussed A.T.'s performance, but never provided Plaintiffs with an IEP following that meeting.

56. Plaintiffs never received an IEP for the 2022-23 school year, which further excluded A.T. from his education on the basis of his disabilities.

57. On April 3, 2023, the District convened an Eligibility Meeting to review the results of the reevaluations that were recently administered. It was reported, *inter alia*, that A.T.'s visual perception impacted him in the classroom. More specifically, he had the skills to participate but he took longer to complete assignments than his peers. He was supposed to have accommodations/extensions on his Chromebook to accommodate this challenge, but this was not possible, as the computer accommodations did not support the format of the assignments given by his teachers. Therefore, he was not provided with the necessary accommodations. This meant that the District was continuing to exclude A.T. from his education on the basis of his disability.

---

[4] The stay-put rule "functions, in essence, as an automatic preliminary injunction" and "the usual prerequisites to injunctive relief are not required." *Drinker ex rel Drinker v. Colonial Sch. Dist.,* 78 F. 3d 859, 864 (3d Cir. 1996). *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 619 (6th Cir. 1990) gave "current educational placement" its "plain meaning" and held that the term "refers to the operative placement actually functioning at the time the dispute first arises." 20 U.S.C. § 1415 (e)(3) of the IDEA, the "stay put" provision, holds: "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed." Furthermore, "Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Honig v. Doe*, 484 U.S. 305, 323 (1988).

58. On May 3, 2023, the parties convened to develop an IEP for the 2023-24 school year. In that IEP, the district proposed continuation of in-class resource for the rest of the 2023-24 school year (where A.T. was currently placed since the District never proposed a revised IEP) and placement in the self- contained Learning or Language Disabilities class for the 2023-24 school year. The rationale provided was that A.T. struggled staying on task and completing his assignments so he was receiving poor grades in his classes even though his teachers reported that he was doing "reasonably well" in his classes. However, the district failed to acknowledge that the LLD class was not the least restrictive environment for A.T.

59. The District further attempted to justify the proposed change of placement by noting that A.T. was very disruptive in class from a social standpoint. When Plaintiffs inquired about the provision of speech and language to teach him appropriate methods of communicating his needs, the District replied that the Parents declined speech and language services by A.T.'s family on February 2, 2022 (15 months prior) so they were not being provided.

60. The District excluded A.T. from his education when it refused to provide him with counseling services for fifteen months. Additionally, the District documented that it did not provide the counseling services on the draft IEP.

61. By failing to provide speech and counseling services to A.T., the District was further excluding him from the benefits of his education as a student with disabilities.

62. In fact, the correspondence actually reflected that Parents agreed to only put the speech and language services "on hold" pending an IEP meeting to discuss A.T.'s participation

in those sessions. However, in spite of repeated requests, the District never convened a follow-up IEP meeting after that concern was expressed to reinstate said services.

63. Parents pointed out that the reason A.T. was struggling was because A.T.'s teachers were not following the accommodations set forth in A.T.'s IEP. This included, *inter alia*, failing to break down assignments; failing to provide an extra copy of notes, study guides, etc; providing additional time to complete assignments, tests, quizzes, and homework; allowing up to 5 additional school days to turn in work; allowing additional time to complete assignments; and providing A.T. with graphic organizers.

64. In spite of repeated emails from the Plaintiffs to District personnel (including the Director of Special Services) demonstrating the District failed to provide these reasonable accommodations, District personnel insisted that placement in a more restrictive environment was appropriate. Again, the lack of reasonable accommodations meant that the District was denying A.T. equal access to his program on the basis of his disability.

65. Though A.T. had an IEP, the District refused to implement many, if not all, of A.T.'s accommodations.

66. In May 2023, Parents pointed out that the reason A.T. was struggling was because A.T.'s teachers were not following the accommodations set forth in A.T.'s IEP. This included *inter alia*, failing to break down assignments; failing to provide an extra copy of notes, study guides, etc; providing additional time to complete assignments, tests, quizzes, and homework; allowing up to 5 additional school days to turn in work; allowing additional time to complete assignments; and providing A.T. with graphic organizers.

67. District personnel have failed to provide A.T. with reasonable accommodations and modifications necessary for him to access his education.

12

68. The ongoing refusal to implement A.T.'s accommodations and related services means that the District is denying A.T. the ability to access his education. In other words, the District is denying A.T. the ability to access the benefits of his program equal to that of his non-disabled peers.

69. The District's intentional discrimination and deliberate indifference to the same has denied A.T. the ability to access his program on the basis of his disability.

**As to the District's retaliation:**

70. After Parents began advocating more vigorously for A.T.'s special needs, teachers and/or staff started to scare A.T. at school. A.T.'s teachers and his aide scolded and harassed him, punished A.T. (with detentions and suspensions) for conduct that was a manifestation of his disability, denied him reasonable accommodations, and gave him poor grades.

71. Starting in February 2021, before A.T. even stated to attend school in the District, it began retaliating against the Parents, due to their advocacy of A.T.'s right to a FAPE.

72. In February 2021, Mrs. T. attended an articulation meeting with the District to discuss A.T.'s upcoming enrollment and planned courses. At this point in time, A.T. was attending the Colts Neck Township School District, which only goes until grade eight. As such, this articulation meeting was scheduled to discuss A.T.'s transition into the District.

73. During this meeting, High School Special Education Supervisor Fitzhenry made discriminatory comments regarding the Parents of foreign countries lacking "understanding and acceptance" of their child's disability.

74. Following the articulation meeting, Mrs. T. reported Special Education Supervisor Fitzhenry to Director of Special Education, Jessica Howland. Mrs. T. made the report

13

because Ms. Fitzhenry had predetermined A.T.'s placement outside of an IEP meeting. After Mrs. T. made the report, the District began to fail A.T. in his classes, starting in the fall 2022. The District staff also threatened him with suspensions and targeted him for minor disciplinary infractions. In addition, A.T.'s teachers began to yell at him for how he was wearing his mask.

75. In February 2022, after the Parents notified the Director of Special Education and other staff that the District was not following the IEP, which included failing to provide accommodations, the District failed A.T. for every subject.

76. Upon information and belief, around this time, the District forbade its teachers from communicating with the Parents. Instead, it would only allow them to speak with the Supervisor of Special Education, Ms. Fitzhenry.

77. Parents report that by the end of February 2022, they felt compelled to stop advocating for A.T., due to their fear that the District would retaliate against them.

78. This pattern of penalizing A.T. for alleged inappropriate conduct, which was a manifestation of his disabilities, continued throughout the time Parents advocated for A.T.

79. By way of example, the District would punish A.T. for engaging in behavior that is typical of students with autism. Here, A.T. would make socially inappropriate comments to peers, which included saying, "I don't like you." Rather than recognizing that students with autism frequently struggle with social interactions and communication, the assistant principal would "get in [A.T.'s] face" or threaten to write him up for the comments.

14

80. On other occasions, the assistant principal would repeatedly reprimand A.T. for checking the time on his phone. It is not uncommon for children with autism to have obsessive-compulsive tendencies, such as frequently checking the time.

81. Additionally, staff frequently reprimanded A.T. for not completing his school work when he experienced physical pain due to his spinal-cord malformations and related issues.

82. Rather than programming for his alleged behavior by conducting a functional behavior assessment and developing a behavior intervention plan, the District continued to address these alleged behaviors through punitive measures.[5]

83. Upon information and belief, these punitive measures were in response to the Parents' advocacy and disagreement with the child study team.

84. Parents continued to advocate for A.T. during the 2023 school year, only for the District staff and child study team to resist them. This pattern of resisting the Parents' advocacy has continued through the date of this filing.[6]

85. Throughout the spring 2022, the District responded to Parent's concerns by denying A.T. his accommodations for typing and by isolating him from peers in science class, by denying him the ability to have a lab partner. A.T. reports that he experienced emotional distress and that his self-esteem was destroyed after the District denied him a lab partner.

86. In May 2022, the District sent Parent a medical release form to conduct a scoliosis examination of A.T. Mrs. T. responded by signing to opt out of the screening. Even though Mrs. T. did not consent, the District conducted the scoliosis examination. Upon information and belief, conducted the screening in response to Parents' advocacy.

---

[5] Parents signed a consent for a functional behavior assessment on May 4, 2023. Despite signing consent for this evaluation, the District never completed it. The failure to collect appropriate behavioral data and to program for this area of need, further denied A.T. the benefits of his education equal to that of his non-disabled peers.

[6] The Parents affirm that the District refused to work with them in response to their advocacy since at least 2021 and continuing through the date of this filing.

15

87. Furthermore, Ms. T. did not consent to the examination because it A.T. would have an emotional reaction to it.

88. In response to Parent not consenting to the scoliosis screening, District staff threatened A.T. that they would send him to the assistant principal's office as a punishment. They also threatened to suspend him

89. Though Parent verbalized her concerns to the District that A.T. would have an emotional reaction if the examination was conducted, the District went forward with it.

90. Because the District staff touched A.T. without his consent, he has experienced emotional distress.

91. Upon information and belief, the District conducted the scoliosis examination in response to Parent's objection and so it could *get a rise out of* A.T. In other words, upon information and belief, the screening was done to instigate a behavioral response from A.T. because Parent was advocating for his rights.

92. In August 2022, Parents had their then attorney request an IEP meeting. The District refused to convene the meeting. Upon information and belief, the District denied Parents their right under the IDEA to an IEP meeting and to meaningful participation due Parents' engagement of a special education attorney.

93. Subsequently, the District responded to Parents' and their attorney's requests for the IEP meeting by exiting A.T. from special education. The District did not follow any of the procedures for exiting a student from special education.

94. Though, in September, the District reinstated A.T.'s eligibility for special education, it refused to offer or implement the IEP accommodations and related services. Upon

16

information and belief, the District refused to implement the accommodations and related services in direct response to Parents engaging a special education attorney.

95. By retaliating against the Parents and denying A.T. his accommodations and related services, the District denied A.T. access to the benefits of his program.

96. In September 2022, Parents filed for due process against the District. The District, upon information and belief, responded by doubling its efforts to deny A.T. the accommodations and related services in his IEP.

97. Continuing into the 2023-2024 school year, the Parents pursued their due process complaint against the District. The Parents filed a second due process complaint in March 2024 to assert a claim for compensatory education, because the District denied A.T. appropriate special education from February 2022 through March 2024. The District responded to Parents' advocacy and due process complaint by refusing to follow the stay-put IEP, writing up A.T., and refusing to conduct the functional behavioral assessment, which Parents requested.

98. In addition, A.T.'s teachers failed him during the 2023-2024 school year in many of his classes.

99. For example, the District refused to provide accommodations in English class, which caused him to fail.

100. It was only after Mrs. T. advocated for him that the District engaged in retaliatory conduct.

101. The retaliatory conduct only served to chill Parents' ability to advocate for A.T. and for A.T. to meaningfully access his education.

17

**As to the Hostile Learning Environment:**

102.    Through the 2023-2024 school year, students bullied A.T. Even though Parents and A.T. reported the bullying, the District did nothing to address it.

103.    Students would call A.T. "trash," "stupid," and "jerk off," and "harasser" to name a few examples. They also would tell other students "don't talk to [A.T.] because he is a harasser." These students would also tell A.T. that "he doesn't know how to talk." It is notable that the students made fun of the way A.T. spoke, as he is a student that requires speech and language services.

104.    In addition, a student assaulted A.T. in the hall in January 2024. Though Parent reported the assault, the District took no steps to address it.

105.    The bullying is interfering with A.T.'s ability to access his education. He reports feeling distracted from the bullying and that he is afraid to attend school. Furthermore, he notes that the bullying is interfering with his ability to learn.

106.    The District's deliberate indifference to the bullying means that it is subjecting him to a hostile learning environment and denying him the ability to access his education.

107.    Ultimately, the hostile environment resulted in A.T. experiencing emotional anguish. He is now undergoing therapy and related treatment.

**As to the Discrimination on the Basis of National Origin:**

108.    Plaintiff Parents O.T. and A.T.'s native language is Albanian. Both Parents were born in the Republic of Albania and later moved to the United States of America.

109.    While Albanian is their first language, they do speak English. Both Parents report, however, that reading and writing in English outside of their daily life and professional

18

fields is challenging for them; especially, for certain technical documents. Notably, reading and understanding documents, such as consent forms, HIPAA/medical release forms, and other educational-related documents is challenging for them.

110.    The Plaintiffs are limited English proficient ("LEP") parents.

111.    Parents have repeatedly requested that the District translate forms, such as consent forms and other technical, educational documents into Albanian, so they could fully understand the documents.

112.    The IDEA grants the parents of children with disabilities the right to participate in decisions about their children's placement. 34 CFR 300.116 (a)(1); 34 CFR 300.327; 34 CFR 300.501 (c); and 71 Fed. Reg. 46,585 (2006). Moreover, Parents are an essential part of any group making the placement decision. *Id.* In other words, per IDEA and supporting regulations, Parents are members of the IEP team.

113.    By denying the LEP Parents translation of these documents, the District is denying them the ability to participate in their child's education. In other words, the District is excluding the Parents on the basis of their national origin and because they are LEP's.

114.    Since 2021, the Parents have requested that the District translate documents, such as consent forms, so that they can better understand them. Despite Parents' repeated requests for translation, the District refuses to translate them.

115.    As of the date of this filing, the District continues to refuse to translate documents for the Parents.

116.    On February 10, 2022, Mrs. T. requested an explanation or translation in Albanian, of personal health information forms that the District wanted them to sign. The District refused to translate the forms and it stopped responding to the Parents' requests.

19

117.   Ms. T. subsequently requested that the document be translated into her native language, Albanian, as she did not understand what she was signing. The District refused to translate the document.

118.   Around this time, and continuing through the date of filing, the District would mock Parents during meetings about the way that they communicated. During meetings, staff have made discriminatory comments and hand gestures in response to the way Parents communicate; especially, when they struggle with expressing themselves in English. Instead of offering the Parents support, the staff mocked them.

119.   Parents reported that the staff would comment, "your accent is very heavy" whenever the Parents asked questions during meetings and phone calls. These same staff would comment that "people from foreign countries don't want to accept disabilities" and "you don't understand your son's disabilities."

120.   On other occasions, when Parents struggled to speak or stopped to think about their word choice, staff would laugh at them. These same staff members would make faces in response.

121.   Whenever Mrs. T. requested that the District translate forms for them, the District refers the Parent to their attorney. Parents' attorney at the time, did not speak Albanian. Furthermore, she was not a translator. Relying on an attorney, who was not trained in translation, to translate the documents, further denied the Parents from participating in their child's education.

122.   The District staff would further respond to Parents' request for translation with discriminatory statements, such as "Mrs. [T.] is clearly fluent in English." It is notable

that Mrs. T. was requesting for the translation for her husband, as he had a limited understanding of special education and the related forms.

123.    The District has evidenced its animosity toward the Plaintiffs based on their national origin. For example, staff in the District have stated to Mrs. T., "We will educate you about how it's done; in this country, when you're sick, you go to a doctor; when your child needs special education, you come to us and we decide where he goes to school." By way of further example, staff have said to Mrs. T., "Immigrants don't like the way we do stuff we do in this district and people from other countries don't want to accept that their kids have disabilities."

124.    The District's discrimination on the basis of national origin has interfered with the Parents' ability to advocate for their son and to meaningfully participate in decisions regarding his education.

**Count 1**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT--DENIED**
**THE BENEFITS OF EDUCATIONAL SERVICES BY REASON OF DISABILITY**
*A.T. v. Freehold Regional High School District*

125.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

126.    The Americans with Disabilities Act ("ADA") prohibits discrimination against qualified individuals with disabilities on the basis of their disability. 42 U.S.C. §§ 12161, 12132. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of her disability." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013).

127. The Defendant discriminated against, and denied A.T. the benefits to his program, under the Americans with Disabilities Act when:

   a. The Plaintiff is recognized as a person with disabilities, which includes, *inter alia*, autism spectrum disorder and a communication impairment. In fact, because of A.T.'s disabilities, it provides him--albeit, inconsistently--with special education through an IEP.

   b. The District is a federal funds recipient and its school buildings and facilities are places of public accommodation.

   c. A.T. is otherwise qualified to participate in the program at the District.

   d. The District has demonstrated he is otherwise qualified to participate in their program by virtue of the fact that it has developed an IEP.

   e. The Defendant District and Board denied A.T. the benefits of his program in several ways, as set forth in ¶¶ 29-69.

128. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied A.T. the benefits of his program on the basis of his disability.

129. Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

**Count 2**
**DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT**
*A.T. v. Freehold Regional High School District*

130. Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

131. To establish a prima facie case under the §504 of the Rehabilitation Act ("RA")[7], a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

132. The Defendant discriminated against, and denied A.T. the benefits to his program, under the Rehabilitation Act when:

   a. The Plaintiff is recognized as a person with disabilities, which includes*, inter alia*, autism spectrum disorder and a communication impairment. In fact, because of A.T..'s disabilities, it provides him--albeit, inconsistently--with special education through an IEP.

   b. The District is a federal funds recipient and its school buildings and facilities are places of public accommodation.

   c. A.T. is otherwise qualified to participate in the program at the District.

   d. The District has demonstrated he is otherwise qualified to participate in their program by virtue of the fact that it has developed an IEP.

   e. The Defendant District and Board denied A.T. the benefits of his program in several ways, as set forth in ¶¶29-69.

   f. The Defendants' deliberate indifference to implementing his accommodations, together with their intentional discrimination, interfered with A.T.'s ability to fully participate and benefit from his program.

---

[7] *See* 29 U.S.C. § 794(a).

23

133.    As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied A.T. the benefits of his program on the basis of his disability.

134.    Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

## Count 3
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### A.T. , O.T., and A.T. v. The Freehold Regional High School District

135.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

136.    The Americans with Disabilities Act protects individuals from retaliation for engaging in activities, seeking to press or vindicate rights provided by statute. §12203 of the ADA provides:

> No person shall discriminate against any individual because such individual *has opposed any act* or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. §12203(a).

137.    The Plaintiffs engaged in a protected and lawful activity when they advocated for their child, A.T., through the IEP process, and when they filed for due process, to secure his right to a free appropriate public education, and for his right to be able to access the school building with reasonable accommodations.

138.    The Defendant retaliated against the Plaintiffs after they advocated for A.T. and filed for due process as set forth in ¶¶70-101.

139.    The timing of the Defendant's conduct was proximate to the Plaintiffs' advocacy or filing for due process.

24

140.    The retaliatory conduct further denied A.T. access to his program and chilled Parents' ability to advocate for him.

141.    Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

**COUNT 4**
**RETALIATION UNDER § 504 OF THE Rehabilitation Act**
*A.T. , O.T., and A.T. v. The Freehold Regional High School District*

142.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

143.    The federal regulations under §504 provide:

No recipient [of federal funds] or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by the [Rehabilitation Act], or because he has made a complaint, testified, assisted, or participated in any manner, proceeding or hearing [.]

34 CFR §107(e).

144.    The Plaintiffs engaged in a protected and lawful activity when they advocated for their child, A.T., through the IEP process, and when they filed for due process, to secure his right to a free appropriate public education, and for his right to be able to access the school building with reasonable accommodations.

145.    The Defendant retaliated against the Plaintiffs after they advocated for A.T. and filed for due process as set forth in 70-101.

146.    The timing of the Defendant's conduct was proximate to the Plaintiffs advocacy or filing for due process. More specifically:

147.    The retaliatory conduct further denied A.T. access to his program and chilled Parents' ability to advocate for him.

25

148.    Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

**COUNT 5**
**DISCRIMINATION ON THE BASIS OF LANGUAGE AND NATIONAL ORIGIN---42 U.S.C. § 2000d**
*A.T. , O.T., and A.T. v. The Freehold Regional High School District*

149.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

150.    42 U.S.C. 2000d, which is Title VI of the Civil Rights Act of 1964, affirms, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

151.    Language-based discrimination constitutes national origin discrimination, which is prohibited by Title VI.

152.    Title VI and its implementing regulations require that the District take affirmative steps to prevent discrimination. Because language-based discrimination is a form of national origin discrimination under Title VI,  federally funded recipients, such as school districts, must take reasonable steps to ensure that limited English proficient ("LEP") parents have meaningful access to their program and activities. 28 CFR 42.405(d)(1); 2002 Guidance, 67 Fed Reg. at 41,459.

153.    The importance of the IDEA and the IEP process in the lives of children with disabilities and their LEP parents cannot be overstated. Providing their children with disabilities a FAPE is of crucial importance in the lives of LEP parents. The IEP process is how the IDEA is effectuated and provides FAPE to children with disabilities. Receiving a FAPE is one of the most important factors in a child's growth, development,

26

and future success, and life. It is for this reason that the DOJ and DOE have repeatedly, through regulations, notices, and letters, emphasized the obligations of school districts to ensure meaningful communication with LEP parents, which, notably, includes IEP meetings.

154.    The District is a federal funds recipient.

155.    The District has the resources necessary to ensure compliance with Title VI and the provision of FAPE to A.T.

156.    Parents have put the District on notice that they need certain documents translated into Albanian.

157.    While Parents do speak English, Albanian is their native language. It is for this reason that they need technical documents, such as the consent forms and other related documents, translated into Albanian.

158.    Despite Parents' numerous requests to have IEP's and other special education documents translated into Albanian, the District has refused to do so.

159.    As set forth in ¶¶108-124, the District discriminated against Parents, as LEP's, when it refused to translate the documents.

160.    The District's refusal to translate the documents into Albanian is denying Parents the ability to participate in A.T.'s education

161.    Upon information and belief, the District's refusal to translate the documents is intentional and/or is being done with deliberate indifference.

162.    The District's refusal to translate the documents into Albanian is the direct and proximate cause of Parents' and A.T.'s damages, along with the concomitant violation to their civil rights.

27

163. Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

**COUNT 6**
**Discrimination in Violation of the Equal Education Opportunities Act**
*A.T. , O.T., and A.T. v. The Freehold Regional High School District*

164. Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

165. 20 U.S.C.S. § 1703 provides that no State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by— (d) discrimination by an educational agency on the basis of race, color, or national origin in the employment, employment conditions, or assignment to schools of its faculty or staff, except to fulfill the purposes of subsection (f) below; (e) the transfer by an educational agency, whether voluntary or otherwise, of a student from one school to another if the purpose and effect of such transfer is to increase segregation of students on the basis of race, color, or national origin among the schools of such agency; or (f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

166. 20 U.S.C.S. § 1703 bars educational institutions from denying an educational opportunity based on a language barrier.

167. The Defendant School District is an educational agency, which, in this case, is a local education agency.

168. The Plaintiffs faced language barriers impeding the equal participation in the Defendant's instructional programs, as set forth in ¶¶108-124.

169. The Defendant District failed to take appropriate action to allow the Plaintiffs to overcome their language barriers, as set forth in ¶¶108-124.

28

170. The Plaintiffs were denied equal educational opportunities, as set forth in ¶¶108-124.

171. The Defendant's violation of 20 U.S.C.S. § 1703 is the direct and proximate cause of the Plaintiffs' damages.

172. Plaintiffs now seek damages and injunctive relief to enforce their equal access to the IEP process, together with translation services.

173. Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

**COUNT 7**
**DENIAL OF EQUAL PROTECTION--42 U.S.C. § 1983**
*A.T. , O.T., and A.T. v. The Freehold Regional High School District*

174. Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

175. Plaintiffs allege that the Defendant District deprived them of their rights and privileges secured to them by the Fourteenth Amendment by denying them equal protection of law.

176. The District is a federal funds recipient.

177. Upon information and belief, the District has adopted a custom, policy, and/or practice of refusing to translate documents.

178. The Defendant abridged the Plaintiffs' rights to equal protection under the law when it denied them translation services, which, in turn denied them access to the benefits of A.T.'s educational program, as set forth in ¶¶108-124.

179. Upon information and belief, the Defendant's discrimination was either intentional or based on deliberate indifference.

180. The Defendant's conduct is the direct and proximate cause of the Plaintiff's harm.

29

181.    Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT 8
### DISCRIMINATION ON THE BASIS OF DISABILITY--NJLAD
*A.T. v. The Freehold Regional High School District*

182.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

183.    The NJLAD prohibits discrimination on the basis of disability. N.J. Stat. Ann. § 10:1-2.

184.    The NJLAD applies to school settings.

185.    The NJLAD protects students from a hostile learning environment.

186.    The NJLAD prohibits disability-based discrimination.

187.    A.T. is entitled to attend school with reasonable disability accommodations, to have his accommodations implemented with fidelity, and to attend school without staff retaliating against him.

188.    The Defendant abridged Plaintiff's rights when it refused to provide him with reasonable accommodations as set forth in ¶¶29-69.

189.    As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied the Plaintiff the benefits of his program.

190.    Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

## COUNT 9
### HOSTILE LEARNING ENVIRONMENT IN VIOLATION OF NJLAD
*A.T. v. The Freehold Regional High School District*

191.    Plaintiffs A.T. and O.T. o/b/o A.T. hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

192. The Defendant District subjected A.T. to a hostile learning environment when:

    a. The Defendant's conduct, upon information and belief, would not have occurred but for A.T.'s disability status.

    b. The conduct was severe and pervasive. As set forth in ¶¶102-107, the District subjected A.T. to a hostile environment on the basis of his disability.

    c. A.T. reasonably believed that the conditions of education were altered and abusive.

    d. The conditions were altered and abusive, which included disrupting A.T.'s ability to learn and focus, and causing him to become fearful to attend school, as set forth in ¶¶102-107.

193. The District's hostile learning environment is the direct and proximate result of Defendant's deliberate indifference and intentional discrimination. Moreover, the District's hostile learning environment denied the Plaintiff the benefits of his program.

194. Wherefore, the Plaintiffs pray for relief against Defendant as hereinafter set forth in the prayer for relief.

## DAMAGES

195. Plaintiffs suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; attorneys' fees and costs of suit, and any

31

and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

196.    WHEREFORE, Plaintiffs A.T., O.T., and A.T. respectfully pray that the Court award them compensatory and restitutionary damages against all Defendants for, including, but not limited to, psychological treatment, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, interference with their civil rights, and reasonable attorneys' fees and costs of suit. Furthermore, the Plaintiffs seek any and all equitable and declaratory relief, including injunctive relief, compelling the District to provide translation services/translation of documents, together with any and all remedies, that the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

In accordance with federal law, A.T., O.T., and A.T. hereby demand a trial by jury on all appropriate issues.

Respectfully submitted,

**THE MONTGOMERY LAW GROUP, PLLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
*Attorneys for Plaintiff*

Dated: August 15, 2024                    By: _____

Bradley R. Flynn
NJ Bar ID No. 173362016

32